[Civ. No. 5508. First Appellate District, Division One.—February 9, 1928.]

R. WHISTON et al., Respondents, v. C. W. PELHAM, Appellant.

Spicer, Meacham & Mason and Bruce Mason for Appellant.

John B. Haas and John D. Home for Respondents.

STROTHER, J., *pro tem.*—This suit was brought by plaintiffs to require an accounting by defendant of proceeds of sale of oil and gas from an oil well in Long Beach, and for judgment for whatever might be found due them.

Defendant had sold and conveyed to plaintiffs R. Whiston and Celia Whiston, his wife, a three per cent interest in an oil lease and in a well which was then being drilled on the leased property. In this conveyance the Whistons were named as parties of the first part and Pelham as party of the second part. The Whistons conveyed a part of their interest to the plaintiff Stevens. The conveyance by defendant Pelham provided, "the party of the second part hereby sells, conveys and assigns to parties of the first part a three per cent (3%) interest in one certain oil and gas Lease on Lots 12, 13 and 14 in said Block 'H' to the party of the second part and his associates, given by J. W. Paulson et al. and C. W. Long, together with the same interest in one oil well now drilling on said location. Said well to be drilled, completed and put upon production at the cost and expense of party of the second part and his associates. Said three per cent (3%) shall be of the whole of said well and assigned out of the interest and share of the party of the second part." Under the arrangement made with the purchaser of the oil and gas, payments were made to Pelham for the whole of his original share, and he in turn made settlements with the plaintiffs for their part.

Defendant answered to the complaint alleging that he had fully accounted to plaintiffs for their part of the proceeds of such sales. In a separate defense he set out the total amount realized from sales, deducting the royalty payments under the lease, and expense of marketing the products and maintaining the well. He further set forth that he had sold the Whistons a one and one-half per cent interest in another well out of his interest therein, the payments on account of sales to the extent of their interest being made direct to the Whistons, without deduction for operating expenses, taxes, and maintenance, which were charged to him against his remaining interest. This was not alleged specifically as an offset or counterclaim, but was apparently so treated on the trial.

The court entered an interlocutory decree in favor of plaintiffs, and referred the accounting. Upon the filing of the referee's report, judgment was entered against the defendant for the amount ascertained to be due, and from this judgment appellant appeals.

The controversy between the parties grew out of their differing ideas of what constituted a completion of the well, and of the construction of the meaning of the phrase "whole of the well" in the conveyance. When the well was first put on production it flowed only a short time and the supply of oil became exhausted. Appellant and his associates expended a considerable sum of money in deepening the well and bringing it to permanent production. Three per cent of this sum he charged to respondents in his settlements as part of the cost of maintenance. Respondents contend that the well was not completed until brought to substantially continuous production. Evidence was introduced in support of each of these views. Besides, the appellant argued that the deepening of the well was in effect drilling a new well, the expense of which was, under the express terms of the conveyance, chargeable proportionally. The trial court in construing the clause in its application to the facts, with such light as the expert evidence threw upon it, adopted, we think, properly, respondents' view as the more reasonable.

The other differences between the parties resulted from their differing contentions as to the meaning of the expression "three per cent of the whole of the well, assigned out of the interest and share of the party of the second part," Pelham.

It will be noted that, by the assigning clause preceding this phrase, the interest in the well was vested in the plaintiffs. The later clause was evidently put in for the purpose of defining, or modifying in some way, the character or extent of the interest conveyed. It is quite apparent that the meaning of the language is not clear. The trial court took this view and admitted evidence of the circumstance of the transaction and the negotiations between the parties.

The testimony of the appellant was to the effect that the clause was put in because Whiston feared that the contract might be construed as conveying three per cent only of Pelham's interest in the well. Whiston, on the other hand,

testified that the agreement was that his interest was to be three per cent of the gross proceeds of the well. His version would appear to be confirmed by the statement in the contract that the three per cent should be assigned out of the "interest and share" of Pelham, and by a further provision "that in the event of any other well being drilled upon said lease, the parties of the first part are to pay their proportionate share of all expenses," not merely their share of the drilling expense.

The trial court adopted their view from the evidence and its finding cannot be disturbed.

It follows that the judgment must be, and it is, affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 9, 1928.

All the Justices concurred.